UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MARQUES; CRISTINA ROBLES,<br><br>                        Plaintiffs,<br><br>    v.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION; BANK OF AMERICA, NATIONAL ASSOCIATION, successor by merger to BAC Home Loan Servicing LP f/k/a Countrywide Home Loans Servicing, LP; DOES 1 THROUGH 10, inclusive; APG FUND I, LLC,<br><br>                        Defendants. | CASE NO. 12cv1873 - IEG (MDD)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FEDERAL HOME LOAN MORTGAGE CORPORATION'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>[Doc. No. 5] |

Presently before the Court is Defendant Federal Home Loan Mortgage Corporation's ("Freddie Mac") motion to dismiss Plaintiffs' first amended complaint ("FAC") for failure to state a claim. [Doc. No. 5, Def.'s Mot. to Dismiss ("Def.'s Mot.").]  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

### BACKGROUND

On July 30, 2012, Plaintiffs filed an initial complaint against Freddie Mac, BANA, and Does 1 through 10. [Doc. No. 1, Compl.]  Plaintiffs filed their FAC on August 16, 2012 and added Defendant APG Fund. [Doc. No. 3, FAC.]  In their FAC, Plaintiffs allege eight causes of action: (1) declaratory relief; (2) declaratory relief; (3) negligence; (4) quasi-contract; (5)  violation of 15 U.S.C. § 1692, et seq.; (6) violation of California Business and Professions Code § 17200, et seq.;

(7) accounting; and (8) quiet title. [Id.]  On September 14, 2012, Defendant Freddie Mac filed the present motion seeking to dismiss Plaintiffs' FAC.  [Doc. No. 5, Def.'s Mot.]  Plaintiffs allege the following facts in their FAC.

On or about January 6, 2004, Plaintiffs Michael Marques and Cristina Robles (collectively "Plaintiffs") obtained title to real property commonly known as 172 Whitney Street, Chula Vista, California ("the Property") by grant deed.  [Doc. No. 3, First Amended Verified Complaint ("FAC") ¶¶ 7, 29; Doc. No. 3-1, Ex. A, Grant Deed.]  On or about September 6, 2006, Plaintiffs executed a Mortgage Note ("Note") and a Deed of Trust in favor of First Magnus Financial Corporation ("First Magnus") to borrow $376,000 to finance the Property.  [Id. ¶ 30; Doc. No. 5-1, Def.'s Mot. at 1.]  The Deed of Trust named Mortgage Electronic Registration Systems ("MERS") as the nominee for First Magnus and as the beneficiary of the Deed of Trust to secure the loan against the Property.  [Doc. No. 3-2, Ex. B, Deed of Trust.]

Plaintiffs then allege that First Magnus attempted to securitize and/or sell their loan.  It is difficult to discern from Plaintiffs' FAC exactly what they are alleging occurred during the securitization process.  Plaintiffs allege that there is an "Unknown Trust," which is "the entity that purports to hold the MBS [mortgage backed security ("MBS")] and thus purports to own the Note."  [Doc. No. 3, FAC ¶¶ 21, 31.]  Plaintiffs allege that neither the promissory note nor the deed of trust were validly transferred to the Unknown Trust "due to the failure to follow the basic legal requirements for the transfer of a negotiable instrument."  [Id. ¶¶ 21-22.]  Plaintiffs argue that consequently, "Defendants are merely third-party strangers to the loan transaction."  [Id. ¶ 32.]

Plaintiffs state that Freddie Mac "is either the trustee of a [MBS] established pursuant to the laws of the state of New York [or] claims to own the relevant MBS that Defendants claim contains the Mortgage Note that is the subject of this cause of action."  [Id. ¶ 9.]  Plaintiffs state that they "are ignorant as to the method the Defendant Freddie Mac claims to own an interest in the subject Mortgage Note."  [Id.]

Defendant Freddie Mac argues in its motion to dismiss that subsequently, an assignment transferred the Deed of Trust from MERS to Defendant Bank of America, National Association ("BANA") on January 24, 2012, and that the assignment was recorded on February 2, 2012.  [Doc.

No. 5-1, Def.'s Mot. at 1.] Freddie Mac also argues in its motion to dismiss that Quality Loan Service Corporation became the record trustee under the Deed of Trust. [Id.][1]

Plaintiffs, however, allege that "no recorded assignment of the original Deed of Trust was executed before the closing date of the trust." [Doc. No. 3, FAC ¶ 34.] They claim that the assignment of January 24, 2012 by MERS in favor of BANA was both untimely and invalid because it was executed after the closing date of the Unknown Trust, which violates the Pooling and Servicing Agreement ("PSA"). [Id.] Plaintiffs also contend that the assignment was invalid because it was fraudulently executed by Jeanine Abramoff, who Plaintiffs claim "lacked the requisite corporate and legal authority to effect an actual 'assignment' of the Mortgage Note and Deed of Trust. [Id. ¶¶ 34, 48.]

Plaintiffs further allege that First Magnus declared bankruptcy on August 21, 2007. [Id. ¶ 35.] Because they contend that the assignment to BANA was fraudulent, Plaintiffs argue that the Mortgage Note and Deed of Trust "became subject to the jurisdiction of the Bankruptcy Trustee and the Bankruptcy Court." [Id.] Plaintiffs also argue that the Bankruptcy Trustee did not authorize the January 24, 2012 assignment of the Deed of Trust. [Id. ¶ 38.]

Plaintiffs allege that on April 11, 2012, BANA caused to be recorded and sent to Plaintiffs a Notice of Default and Election to Sell Under Deed of Trust. [Id. ¶ 89.] In July 2012, Plaintiffs allege that BANA, on behalf of Freddie Mac, caused BANA's agent Quality Loan Service Corporation to send to Plaintiffs an undated and unsigned Notice of Trustee Sale to notify Plaintiffs that the Property would be sold on August 10, 2012. [Id.; Doc. No. 3-5, Ex. E, Notice of Trustee Sale.] On August 10, 2012, Quality Loan Service Corporation conducted a trustee's sale

---

[1] Freddie Mac requests that the Court take judicial notice of six documents: (1) a deed of trust; (2) an assignment of the deed of trust; (3) a substitution of trustee; (4) a notice of default; (5) a notice of sale; and (6) a trustee's deed upon sale. [Doc. No. 5-2, Request for Judicial Notice.] Plaintiffs request that the Court take judicial notice of a Notice of Pending Action - Lis Pendens. [Doc. No. 6-1, Request for Judicial Notice.]

Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Courts may take judicial notice of documents that are matters of public record or are quasi-public documents. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). Because all of these documents have been recorded in the San Diego County Recorder's Office and are thus publicly available, the Court **GRANTS** Freddie Mac's and Plaintiffs' requests for judicial notice.

and sold the Property to Defendant APG Fund I, LLC ("APG Fund").  [Doc. No. 3, <u>FAC</u>, ¶ 89.]

Plaintiffs allege that any actions by BANA to collect mortgage payments from Plaintiffs and then to undertake a non-judicial foreclosure and sell the Property are unlawful because the assignment of the deed of trust was invalid.  [<u>Id.</u> ¶¶ 61, 89.]  Plaintiffs also allege that "Defendants failed to properly credit payments made, incorrectly calculated interest on the accounts, and failed to accurately debit fees, as these payments belonged to the true beneficiary of the Note and Deed of Trust."  [<u>Id.</u> ¶ 95.]

**DISCUSSION**

**I.     Motion to Dismiss**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); <u>Navarro v. Block</u>, 250 F.3d 729, 731 (9th Cir. 2001).  The court must accept all factual allegations pleaded in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party.  <u>Cahill v. Liberty Mutual Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir.1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'"  <u>Iqbal</u>, 556 U.S. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 678).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 555 (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)) (alteration in original).  A court need not accept "legal conclusions" as true.  <u>Iqbal</u>, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that

1  defendants have violated the . . . laws in ways that have not been alleged." Associated Gen.
2  Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983).
3      Further, a court generally may not consider materials beyond the pleadings when ruling on
4  a Rule 12(b)(6) motion. United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003). However,
5  a court "may take judicial notice of matters of public record . . . as long as the facts noticed are not
6  subject to reasonable dispute." Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1016 n.9
7  (9th Cir. 2012).
8      As a general rule, a court freely grants leave to amend a complaint which has been
9  dismissed. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court
10 determines that the allegation of other facts consistent with the challenged pleading could not
11 possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393,
12 1401 (9th Cir. 1986).
13     Defendant Freddie Mac first presents three reasons why the entirety of Plaintiffs' FAC
14 must be dismissed. [Doc. No. 5-1, Def.'s Mot. at 9-14.] Freddie Mac then addresses Plaintiffs'
15 first and third through eighth causes of action and presents reasons why they should be dismissed.
16 [Id. at 15-21.] The Court addresses each reason in turn.
17     **A.    Compliance with Minimal Pleading Standards**
18     Defendant Freddie Mac first argues that Plaintiffs' FAC must be dismissed because it "is
19 devoid of specific factual allegations that Freddie Mac held itself out as the holder of the
20 [promissory] note." [Doc. No. 5-1, Def.'s Mot. at 10.] However, Freddie Mac does not explain
21 why the entire FAC must be dismissed because of this purported failure to plead. Therefore, the
22 Court declines to dismiss the entirety of Plaintiffs' FAC on this ground.
23     **B.    Tender**
24     Defendant Freddie Mac also argues that Plaintiffs' FAC should be dismissed in its entirety
25 due to Plaintiffs' failure "to allege actual tender." [Doc. No. 5-1, Def.'s Mot. at 11.] Plaintiffs in
26 their complaint state that they "have offered to and are ready, willing, and able to unconditionally
27 tender their obligation, although there is no requirement to do so." [Doc. No. 3, FAC ¶ 106.]
28 Plaintiffs argue that they are "only required to allege a credible offer of tender, not actually

1  tender." [Id. ¶ 106 n.17 (emphasis omitted).]  Plaintiffs also argue that tender is not required when
2  the validity of the underlying debt is attacked. [Id.]

3      "A valid and viable tender of payment of the indebtedness owing is essential to an action to
4  cancel a voidable sale under a deed of trust." Karlsen v. Am. Savings & Loan Assoc., 15 Cal.
5  App. 3d 112, 117 (1971). "[T]he tender rule is not absolute, and a tender may not be required
6  where it is inequitable to do so." Sacchi v. Mortgage Elec. Registration Sys., Inc., 2011 WL
7  2533029, at *10 (C.D. Cal. June 24, 2011) (citing Onofrio v. Rice, 55 Cal. App. 4th 413, 424
8  (1997)). "Also, if the action attacks the validity of the underlying debt, a tender is not required
9  since it would constitute an affirmation of the debt." Onofrio, 55 Cal. App. 4th at 424; see also
10 Vogan, 2011WL 5826016, at *7-*8.

11     First, Plaintiffs have alleged actual tender in their FAC. [Doc. No. 3, FAC ¶ 106.]
12 Secondly, the tender requirement does not apply because Plaintiffs challenge "the beneficial
13 interest held by [Defendants] in the deed of trust, not the procedural sufficiency of the foreclosure
14 itself." Vogan, 2011WL 5826016, at *7-*8; see also Johnson v. HSBC Bank USA, Nat. Ass'n,
15 2012 WL 928433, at *3 (S.D. Cal. Mar. 19, 2012). Therefore, the Court declines to dismiss
16 Plaintiffs' FAC on the basis of the tender rule.

17     **C.    Plaintiffs' Generalized Claims**

18     Freddie Mac next argues that the following generalized claims made by Plaintiffs lack
19 merit: (1) Plaintiffs' attack on MERS's authority to foreclose; (2) Plaintiffs' assumption that their
20 loan was securitized; and (3) Plaintiffs' challenge of the assignment of the deed of trust. [Doc. No.
21 5-1, Def.'s Mot. at 12-14.]

22     **1.    MERS's Authority to Foreclose**

23     Freddie Mac argues that it is well-settled under California law that "a nominee beneficiary
24 such as MERS is duly authorized to foreclose under the deed of trust," and that Plaintiffs thus
25 cannot challenge MERS's authority to initiate foreclosure. [Doc. No. 5-1, Def.'s Mot. at 12.]
26 However, Plaintiffs do not challenge MERS's authority to foreclose. In their FAC, Plaintiffs
27 merely argue that Defendants Freddie Mac and BANA had no right to conduct the foreclosure sale.
28 [Doc. No. 3, FAC ¶¶ 22, 41, 52, 61, 89.] Therefore, the Court rejects Freddie Mac's argument.

### 2. Plaintiffs' Assumption that their Loan was Securitized

Freddie Mac also argues that "even if Plaintiffs could demonstrate that their promissory note was the subject of securitization, that fact does not free them of the terms agreed upon in the Deed of Trust, or otherwise forgive Plaintiffs from their loan obligations." [Doc. No. 5-1, Def.'s Mot., at 6.] Because Freddie Mac again does not explain why the entirety of Plaintiffs' FAC should be dismissed on this ground, the Court declines to dismiss the entirety of Plaintiffs' FAC.

### 3. Plaintiffs' Lack of Standing to Challenge the Assignment

Freddie Mac then argues that Plaintiffs lack standing to challenge the assignment of the deed of trust to BANA. District courts have held that "borrowers who were not parties to the assignment of their deed—and whose rights were not affected by it—lacked standing to challenge the assignment's validity because they had not alleged a 'concrete and particularized injury that is fairly traceable to the challenged assignment.'" Silving v. Wells Fargo Bank, NA, 2012 WL 135989, *3 (D. Ariz. Jan. 18, 2012) (quoting In re MERS Litig., 2011 WL 4550189 (D. Ariz. Oct. 3, 2011)).

Plaintiffs summarily allege that the "misrepresentations of [BANA] as agent for Freddie Mac damaged them" because they overpaid interest. [Doc. No. 3, FAC ¶ 40.] However, Plaintiffs do not explain how the assignment of the Deed of Trust caused them to overpay in interest. Further, even though Plaintiffs allege that they have been paying the wrong party, the Court finds persuasive the reasoning that "the validity of the assignment does not affect whether [the b]orrower owes its obligations, but only to whom [the b]orrower is obliged." Livonia Prop. Holdings, L.L.C. v. Farmington Road Holdings, L.L.C., 717 F.Supp.2d 724, 735-36 (E.D. Mich. 2010) (emphasis omitted). Regardless of which party held the Deed of Trust, Plaintiffs were still obligated to make payments. "[T]he only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice." Id. at 736 (internal quotation omitted). Plaintiffs have not alleged that they have had to pay their obligation twice.

Therefore, the Court finds that Plaintiffs lack standing to challenge the assignment of the Deed of Trust. Accordingly, the Court **DISMISSES** without prejudice Plaintiffs' first cause of

1  action for declaratory relief and eighth cause of action to quiet title because these claims require
2  Plaintiffs to be able to challenge the assignment of the Deed of Trust.

### D. Plaintiffs' Individual Causes of Action

The Court now addresses Plaintiffs' remaining causes of action.[2]

#### 1. Third Cause of Action: Negligence

The elements of a negligence claim are: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) the plaintiff was damaged. Ladd v. Cnty. of San Mateo, 12 Cal.4th 913, 917 (1996). Under California law, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal.App.3d 1089, 1096 (1991). "In California, the test for determining whether a financial institution owes a duty of care to a borrower-client 'involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." Nymark, 231 Cal.App.3d at 1098 (quoting Connor v. Great Western Sav. & Loan Ass'n, 69 Cal.2d 850, 865 (1968)).

Plaintiffs' arguments regarding Freddie Mac's duty of care are muddled. In their FAC, Plaintiffs state that Defendants have a duty to "follow California law with regard to enforcement of monetary obligations, and to refrain from taking or failing to take action against Plaintiffs that they did not have the legal authority to do." [Doc. No. 3, FAC ¶ 128.] Plaintiffs argue that Freddie Mac owed to them a duty of care due to its "unconventional relationship" with Plaintiffs because it was not receiving the benefits from Plaintiffs' Note and Mortgage. [Doc. No. 6, Pl.'s Opp. at 22.] Plaintiffs then argue that Freddie Mac cannot "hide behind the protection" from the duty of care

---

[2] The Court does not address Plaintiffs' second cause of action, which is only alleged against Defendant APG Fund, because Defendant Freddie Mac does not address this cause of action in its motion to dismiss. [Doc. No. 3, FAC at 37.]

afforded lenders because Freddie Mac did not loan money to Plaintiffs.  [Id. at 23.]

The Court finds that Plaintiffs have not alleged facts sufficient to show that Freddie Mac held itself out as the holder of Plaintiffs' Note.  Although Plaintiffs allege facts that Freddie Mac has taken various actions regarding the Property which are "related to Defendant Freddie Mac's false claim of ownership of the Mortgage Note and Deed of Trust," Plaintiffs do not actually allege that Freddie Mac held itself out as holder of the Note.  Plaintiffs must provide more than mere "labels and conclusions."  See Twombly, 550 U.S. at 555.  Therefore, even though the Court accepts Plaintiffs' factual allegations as true, see Cahill, 80 F.3d at 337-38, their allegations are insufficient to show that Freddie Mac held itself out as the holder of the Note.

Furthermore, even though Plaintiffs argue that they had an "unconventional relationship" with Freddie Mac, this exception applies to the general principle that lenders do not owe a duty of care to borrowers "where the lender plays its conventional role."  See Johnson v. HSBC Bank USA, Nat. Ass'n, 2012 WL 928433, at *4 (S.D. Cal. Mar. 19, 2012); see also Taheny v. Wells Fargo Bank, N.A., 2010 WL 5394315 (E.D. Cal. Dec. 22, 2010).  However, Plaintiffs themselves state that Freddie Mac was not a lender.  [Doc. No. 6, Pl.'s Opp. at 23.]  Thus, the Court finds that Plaintiffs have not alleged facts sufficient to show a relationship between Freddie Mac and Plaintiffs which gave rise to a duty of care.  Therefore, the Court **GRANTS** Freddie Mac's motion to dismiss the third cause of action, and **DISMISSES** without prejudice Plaintiffs' third cause of action as to Defendant Freddie Mac.

### 3.     Fourth Cause of Action:  Quasi-contract

Plaintiffs seek to recover on a quasi-contract cause of action.  Plaintiffs argue that "Freddie Mac has been unjustly enriched by collecting monthly payments from Plaintiff [sic] when it had and has no interest in their Note or Deed of Trust" and that they "seek[] restitution for any payments made to Freddie Mac and BANA including those payments made to others acting in concert with Freddie Mac for its benefit that were not actually paid to the lender or beneficiary, if any."  [Doc. No. 3, FAC ¶¶ 136-37.]  Plaintiffs allege that Freddie Mac, "through its agents and employees including [BANA], has undertaken multiple and ongoing overt acts to obtain moneys and ultimately to attempt to transfer and sell title to Plaintiffs' property . . . ."  [Id. ¶ 89.]

1   Defendants summarily argue that because Plaintiffs do not adequately allege that Freddie
2   Mac was the holder of the Note or that it held itself out to be, Plaintiffs' cause of action for quasi-
3   contract should be dismissed. [Doc. No. 5-1, Def.'s Mot. at 17.] Defendants do not refute
4   Plaintiffs' contentions that Freddie Mac undertook actions to obtain money from Plaintiffs and that
5   it collected monthly payments from Plaintiffs.

6   Because the Court must take Plaintiffs' allegations as true, see Cahill, 80 F.3d at 337-38,
7   the Court **DENIES** Freddie Mac's motion to dismiss as to Plaintiffs' fourth cause of action and
8   finds that Plaintiffs have pleaded facts sufficient to survive a motion to dismiss as to this cause of
9   action.

10  **4.    Fifth Cause of Action:  Violation of 15 U.S.C. § 1692**

11  Plaintiffs contend that Defendants, including Freddie Mac "as the purported assignee,"
12  violated 15 U.S.C. § 1692, the Fair Debt Collection Practices Act (FDCPA) by, inter alia,
13  "[f]alsely represent[ing] the status of the debt, in particular, that it was due and owing to
14  Defendant Freddie Mac at the time the suit was filed" and "[f]alsely representing or implied [sic]
15  that the debt was owing to Defendant Freddie Mac as an innocent purchaser for value, when in
16  fact, such an assignment had not been accomplished" in their attempts to collect on the Note.
17  [Doc. No. 3, FAC ¶ 140.]

18  The FDCPA "generally prohibits 'debt collectors' from making false or misleading
19  representations and from engaging in various abusive and unfair practices in collecting debts.'"
20  Klohs v. Wells Fargo Bank, N.A., 2012 WL 4758126 (D. Haw. Oct. 4, 2012) (citing Heintz v.
21  Jenkins, 514 U.S. 291, 292 (1995)). Thus, a defendant must be a "debt collector" within the
22  meaning of the FDCPA to be liable for its violation. Heintz, 514 U.S. at 294. The term "debt
23  collector" is defined as: "any person who uses any instrumentality of interstate commerce or the
24  mails in any business the principal purpose of which is the collection of any debts, or who
25  regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be
26  owed or due another." 15 U.S.C. § 1692a(6). Courts have found that a defendant is not a "debt
27  collector" within the meaning of the FDCPA when the plaintiff does not adequately allege that the
28  defendant was "(1) a person whose principal business is the collection of debts (whether on behalf

1  of himself or others); or (2) a person who regularly collects debts on behalf of others (whether or

2  not it is the principal purpose of his business)." Derusseau v. Bank of America, N.A., 2011 WL

3  5975821, at *6 (S.D. Cal. Nov. 29, 2011) (quoting Izenburg v. ETS Servs., 589 F.Supp.2d 1193,

4  1999 (C.D. Cal. 2008) (internal quotation marks removed)).

5      Here, the Court finds that Plaintiffs have not alleged facts sufficient to show that Freddie

6  Mac is a debt collector within the meaning of the FDCPA. Therefore, the Court **GRANTS**

7  Freddie Mac's motion as to Plaintiffs' fifth cause of action and **DISMISSES** with prejudice

8  Plaintiffs' fifth cause of action as to Defendant Freddie Mac.

9      **5.    Sixth Cause of Action:  Violation of California Business and Professions Code § 17200, et. seq.**

10

11      California Business and Professions Code § 17200, et. seq., also referred to as the unfair

12  competition law ("UCL") "prohibits, and provides civil remedies for, unfair competition, which it

13  defines as 'any unlawful, unfair or fraudulent business act or practice." Kwikset Corp. v. Superior

14  Court, 51 Cal.4th 310, 320 (2011) (quoting Cal. Bus. & Prof. Code § 17200). "Because the statute

15  is written in the disjunctive, it prohibits three separate types of unfair competition: (1) *unlawful*

16  acts or practices, (2) *unfair* acts or practices, and (3) *fraudulent* acts or practices. Quintero Family

17  Trust v. OneWest Bank, F.S.B., 2010 WL 2618729 (S.D. Cal. June 25, 2010) (citing Cel-Tech

18  Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163, 180 (1999)).

19      Private standing under the UCL is limited to "a person who has suffered injury in fact and

20  has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

21  The intent of this section is to "confine standing to those actually injured by a defendant's business

22  practices." Kwikset Corp., 51 Cal.4th at 321.

23      Defendants argue that "Plaintiffs cannot maintain an action unless they establish a loss of

24  money or property that was caused by the Freddie Mac's [sic] business practice" and that

25  "Plaintiffs have not identified any injury caused by Freddie Mac that would be sufficient to confer

26  standing under section 17200." [Doc. No. 5-1, Def.'s Mot. at 18.]

27      Plaintiffs summarily allege that "[a]s a direct and proximate result of the actions of

28  [Freddie Mac], [BANA], and one or more of the of the DOE Defendants, . . . Plaintiff has [sic] been injured in that a cloud has been placed upon title to Plaintiff's [sic] Property and Defendants

have failed to remove this cloud from Plaintiff's [sic] title, and Plaintiffs have suffered and continue to suffer pecuniary harm." [Doc. No. 3, FAC, ¶ 155.]

The Court finds that Plaintiffs have not adequately alleged facts to show that they were harmed as a result of Freddie Mac's actions. Although Plaintiffs allege various actions that the Defendants have taken, they do not allege what specific actions Freddie Mac took that place a cloud on the title to the Property and that cause Plaintiffs pecuniary harm. Although Plaintiffs state that BANA took various actions as an agent for Freddie Mac [Id. ¶¶ 40, 57, 59, 73, 89.], Plaintiffs have not plead facts to support their legal conclusion that BANA acted as Freddie Mac's agent. See E. & J. Gallo Winery v. EnCana Energy Servs., Inc., 2008 WL 2220396, at *7 (E.D. Cal. May 27, 2008) (quoting Restatement (Third) of Agency, § 1.02 (2005)) ("Whether a relationship is one of agency is a legal conclusion made after an assessment of the facts of the relationship and the application of the law of agency to those facts."); see also In re Toyota Motor Corp., 785 F.Supp.2d 883, 911 (C.D. Cal. 2011) ("Plaintiffs may not rest on legal conclusions regarding agency that are cast as factual allegations.").

Accordingly, the Court **GRANTS** Freddie Mac's motion to dismiss as to Plaintiffs' sixth cause of action and **DISMISSES** without prejudice Plaintiffs' sixth cause of action as to Defendant Freddie Mac.

### 6. Seventh Cause of Action: Accounting

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." Tamburri v. Suntrust Mortg., Inc., 2011 WL 6294472, at *17 (N.D. Cal. Dec. 15, 2011) (quoting Teselle v. McLoughlin, 173 Cal.App.4th 156, 179 (2009)).

Freddie Mac argues that "an Accounting is dependent upon whether there is a fiduciary relationship between the parties," and that Plaintiffs cannot show that a fiduciary relationship existed between Freddie Mac and Plaintiffs. [Doc. No. 5-1, Def.'s Mot. at 20-21.] However, California courts have stated that "a fiduciary relationship between the parties is not required to state a cause of action for accounting. All that is required is that some relationship exists that

requires an accounting." Teselle, 173 Cal.App.4th at 716; see also Kritzer v. Lancaster, 96 Cal.App.2d 1, 7 (1950). "The right to an accounting can arise from the possession by the defendant of money or property which, because of the defendant's relationship with the plaintiff, the defendant is obliged to surrender." Teselle, 173 Cal.App.4th at 716.

Plaintiffs allege that Freddie Mac and BANA have "held themselves out to be Plaintiffs' creditor and mortgage servicer," and that "[a]s a result of this purported relationship with Plaintiffs, said Defendants have a fiduciary duty to Plaintiff [sic] to properly account for payments made by Plaintiffs." [Doc. No. 3, FAC ¶ 158.] Plaintiffs also allege that they have "paid Freddie Mac, [BANA], and other agents and employees of Freddie Mac[] mortgage payments for a period of many years." [Id. ¶ 159.] Plaintiffs also allege that since the money paid Freddie Mac was not owed to it, these amounts "are due to be returned to the Plaintiffs in full." [Id. ¶ 160.]

Even though the Court has found that Plaintiffs have not alleged facts sufficient to show that Freddie Mac held itself out holder of the Note, the Court finds, taking Plaintiffs' allegations as true, see Cahill, 80 F.3d at 337-38, that Plaintiffs have alleged that Freddie Mac collected mortgage payments from Plaintiffs. [Doc. No. 3, FAC ¶ 159.] The Court finds that Plaintiffs have sufficiently pleaded that a relationship exists between Plaintiffs and Freddie Mac that requires an accounting because Plaintiffs alleged Freddie Mac collected payments from Plaintiffs. Therefore, the Court **DENIES** Freddie Mac's motion to dismiss as to Plaintiffs' seventh cause of action.

**CONCLUSION**

For the reasons above, the Court **GRANTS** in part and **DENIES** in part Defendant Freddie Mac's motion to dismiss. Specifically, the Court:

1. **DISMISSES** without prejudice Plaintiffs' first cause of action;
2. **DISMISSES** without prejudice Plaintiffs' third cause of action as to Defendant Freddie Mac;
3. **DENIES** the motion to dismiss as to Plaintiffs' fourth cause of action;
4. **DISMISSES** with prejudice Plaintiffs' fifth cause of action as to Defendant Freddie Mac;
5. **DISMISSES** without prejudice Plaintiffs' sixth cause of action as to Defendant

Freddie Mac;

6. **DENIES** the motion to dismiss as to Plaintiffs' seventh cause of action;

7. **DISMISSES** without prejudice Plaintiffs' eighth cause of action.

Plaintiffs are **GRANTED** twenty-one (21) days from the date this Order is filed to file a Second Amended Complaint addressing the deficiencies of the pleading set forth above.

**IT IS SO ORDERED.**

DATED: December 6, 2012

                                                                  **IRMA E. GONZALEZ**
                                                                  **United States District Judge**